RECEIVED AND FILED

CLERK'S OFFICE USDC PR

2022 MAY 11 PM 5:55

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | **I N D I C T M E N T** |
| Plaintiff, | |
| v. | **CRIMINAL NO.** 22-205 (FAB) |
| [1] PABLO COLON-ROLON,<br>a/k/a "Gordo", a/k/a "Goldo";<br>(Counts 1 through 3) | **Violations:** SEALED |
| [2] CARLOS CASTRO-LECUMBERRI;<br>(Counts 1 through 3) | **COUNT ONE**<br>21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii)<br>and 846 |
| [3] ENMANUEL MATOS-MATOS,<br>a/k/a "El Menor";<br>(Counts 1 through 3) | **COUNT TWO**<br>21 U.S.C. § 841(a)(1) & (b)(1)(A)(ii)<br>and 18 U.S.C. § 2 |
| [4] JOSE PEREZ-CUEVAS,<br>a/k/a "Chipolo";<br>(Counts 1 through 3) | **COUNT THREE**<br>18 U.S.C. § 1956(a)(1)(B)(i) & (h)<br>**COUNT FOUR**<br>21 U.S.C. § 856(a)(2) |
| [5] JUAN MANUEL VAZQUEZ-DIAZ,<br>a/k/a "Demente";<br>(Counts 1 through 3) | |
| [6] SAUL MONTALVO-MULERO,<br>a/k/a "La Momia";<br>(Counts 1 and 2) | **(Four Counts and Forfeiture Allegation)** |
| [7] LUIS M. ORTIZ-RIVERA,<br>a/k/a "Jingo", a/k/a "Ñingo";<br>(Counts 1 and 2) | |
| [8] MIGUEL PINEIRO-RAMOS,<br>a/k/a "El Grande";<br>(Counts 1 through 3) | |
| [9] NELSON SUAREZ-ORTIZ,<br>a/k/a "El Cocinero", a/k/a "El Quemao";<br>(Counts 1 through 3) | |

United States of America vs.
Pablo Colon-Rolon, A/K/A "Gordo" or "Goldo;"", et al.
Page2

[10] CARLOS MARRERO-VAZQUEZ,
a/k/a "El Cartero";
(Counts 1 through 3)

[11] JOHAN TORRES-FELICIANO,
a/k/a "El Ingeniero", a/k/a "Inge";
(Counts 1 through 3)

[12] GUSTAVO RIVERA-MULERO,
a/k/a "El Cano";
(Counts 1 through 3)

[13] ABRAHAM NELSON-BRENES;
(Counts 1, 2 and 4)

      Defendants.

**THE GRAND JURY CHARGES:**

<u>COUNT ONE</u>
**Conspiracy to Possess with Intent to Distribute Controlled Substances**
**21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) and 846**

From at least in or about the year 2020 and continuing up to and until March

16, 2021, in Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

[1] PABLO COLON-ROLON, a/k/a "Gordo", a/k/a "Goldo";
[2] CARLOS CASTRO-LECUMBERRI;
[3] ENMANUEL MATOS-MATOS, a/k/a "El Menor";
[4] JOSE PEREZ-CUEVAS, a/k/a "Chipolo";
[5] JUAN MANUEL VAZQUEZ-DIAZ, a/k/a "Demente";
[6] SAUL MONTALVO-MULERO, a/k/a "La Momia";
[7] LUIS M. ORTIZ-RIVERA, a/k/a "Jingo", a/k/a "Ñingo";
[8] MIGUEL PINEIRO-RAMOS, a/k/a "El Grande";
[9] NELSON SUAREZ-ORTIZ, a/k/a "El Cocinero", a/k/a "El Quemao";
[10] CARLOS MARRERO-VAZQUEZ, a/k/a "El Cartero";

[11] JOHAN TORRES-FELICIANO, a/k/a "El Ingeniero", a/k/a "Inge";
[12] GUSTAVO RIVERA-MULERO, a/k/a "El Cano";
[13] ABRAHAM NELSON-BRENES;

the defendants herein, did knowingly and intentionally, combine, conspire, and agree with each other, and other diverse persons, to commit an offense against the United States, that is, to knowingly and intentionally possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance.

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was the distribution of wholesale amounts of cocaine within Puerto Rico and the continental United States for financial gain and profit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and co-conspirators would accomplish and further the object of the conspiracy included, but was not limited to, the following:

1. At various times throughout the course of the conspiracy, co-conspirators would acquire kilogram quantities of cocaine from various sources for the purpose of both distributing them in Puerto Rico and transporting them from Puerto Rico to the continental United States for further distribution. Co-conspirators would often meet at cock fighting events around Puerto Rico,

networking with known and unknown co-conspirators and entering deals for the purchase, transfer, and sale of kilogram quantities of cocaine.

2. At various times throughout the course of the conspiracy, co-conspirators would utilize the United States Postal Service and other private shipping companies to transport the cocaine to various locations in the continental United States. When utilizing the private shipping companies, the co-conspirators would often conceal the kilograms of cocaine in buckets of industrial sealant, household items, and board games, among other things.

3. At various times throughout the course of the conspiracy, co-conspirators located in the continental United States would receive the cocaine shipments and further distribute them to other co-conspirators.

4. At various times throughout the course of the conspiracy, co-conspirators would collect the proceeds from the sale of cocaine in the continental United States for its return to Puerto Rico.

5. At various times throughout the course of the conspiracy, members took on various roles, to include that of suppliers who sold cocaine to buyers here in Puerto Rico for further distribution to the continental United States, brokers who found buyers for other sellers of kilograms of cocaine for a percentage of the value, shippers who facilitated drug trafficking by preparing and packaging the kilograms of cocaine for shipment, runners/couriers who would deposit cocaine-laden postal parcels in the mail, runners/couriers who would receive those parcels and then deliver cocaine to others in the continental United

States, among others. At times the same given members of the conspiracy might take on a different role depending on the particular deal struck with co-conspirators to traffic a given shipment of cocaine.

All in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) and 846.

<u>COUNT TWO</u>
**Possession with Intent to Distribute Cocaine**
**21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) and 18 U.S.C. § 2.**

From at least in or about the year 2020 and continuing up to and until March 16, 2021, in Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

[1] PABLO COLON-ROLON, a/k/a "Gordo", a/k/a "Goldo";
[2] CARLOS CASTRO-LECUMBERRI;
[3] ENMANUEL MATOS-MATOS, a/k/a "El Menor";
[4] JOSE PEREZ-CUEVAS, a/k/a "Chipolo";
[5] JUAN MANUEL VAZQUEZ-DIAZ, a/k/a "Demente";
[6] SAUL MONTALVO-MULERO, a/k/a "La Momia";
[7] LUIS M. ORTIZ-RIVERA, a/k/a "Jingo", a/k/a "Ñingo";
[8] MIGUEL PINEIRO-RAMOS, a/k/a "El Grande";
[9] NELSON SUAREZ-ORTIZ, a/k/a "El Cocinero", a/k/a "El Quemao";
[10] CARLOS MARRERO-VAZQUEZ, a/k/a "El Cartero";
[11] JOHAN TORRES-FELICIANO, a/k/a "El Ingeniero", a/k/a "Inge";
[12] GUSTAVO RIVERA-MULERO, a/k/a "El Cano";
[13] ABRAHAM NELSON-BRENES;

the defendants herein, aiding and abetting one another, did knowingly and intentionally possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance. All in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(ii) and 18 U.S.C. § 2.

## COUNT THREE
### Conspiracy to Launder Monetary Instruments
### 18 U.S.C. § 1956(a)(1)(B)(i) & (h)

From at least in or about the year 2020 and continuing up to and until March

16, 2021, in Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

> [1] PABLO COLON-ROLON, a/k/a "Gordo", a/k/a "Goldo";
> [2] CARLOS CASTRO-LECUMBERRI;
> [3] ENMANUEL MATOS-MATOS, a/k/a "El Menor";
> [4] JOSE PEREZ-CUEVAS, a/k/a "Chipolo";
> [5] JUAN MANUEL VAZQUEZ-DIAZ, a/k/a "Demente";
> [8] MIGUEL PINEIRO-RAMOS, a/k/a "El Grande";
> [9] NELSON SUAREZ-ORTIZ, a/k/a "El Cocinero", a/k/a "El
> Quemao";
> [10] CARLOS MARRERO-VAZQUEZ, a/k/a "El Cartero";
> [11] JOHAN TORRES-FELICIANO, a/k/a "El Ingeniero", a/k/a
> "Inge";
> [12] GUSTAVO RIVERA-MULERO, a/k/a "El Cano";

the defendants herein, did knowingly combine, conspire, and agree with each other,

and other diverse persons, to commit offenses against the United States in violation

of 18 U.S.C. §§ 1956, to wit: to knowingly conduct and attempt to conduct financial

transactions affecting interstate commerce and foreign commerce, which transactions

involved the proceeds of specified unlawful activity, that is, drug trafficking, knowing

that the transactions were designed in whole or in part conceal and disguise the

nature, location, source, ownership, and control of the proceeds of specified unlawful

activity, and that while conducting and attempting to conduct such financial

transactions, knew that the property involved in the financial transactions

represented the proceeds of some form of unlawful activity.

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was to conduct financial transactions with the proceeds of drug trafficking that would conceal and disguise the nature, location, source, ownership, and control of the proceeds by transferring the proceeds from the continental United States to co-conspirators in Puerto Rico.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1. At various times throughout the course of the conspiracy, co-conspirators would conduct financial transactions where they delivered narcotics proceeds in the form of cash to co-conspirators in the continental United States. Charging a fee for their services, the co-conspirators in the continental United States who received the cash narcotics proceeds, would ensure that the drug proceeds were subsequently transferred back to Puerto Rico, where it would be distributed among co-conspirators with an ownership interest in the proceeds and oftentimes used to invest in the purchasing of additional kilograms of cocaine for subsequent distribution.

2. At various times throughout the course of the conspiracy, co-conspirators would use hidden compartments built in vehicles to conceal narcotics proceeds in the form of bulk cash when transferring the bulk cash from one co-conspirator to another.

3. At various times throughout the course of the conspiracy, co-conspirators would mail narcotics proceeds in the form of bulk cash concealed in postal parcels from the continental United States to Puerto Rico.

4. At various times throughout the course of the conspiracy, co-conspirators would transfer, receive, count, and distribute the profits from the sales of the cocaine.

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (h).

## COUNT FOUR
### Maintaining Drug-Involved Premises
### 21 U.S.C. § 856(a)(2)

From in or about the year 2020 and continuing up to and until March 16, 2021, in the District of Puerto Rico, and within the jurisdiction of this Court,

[13] ABRAHAM NELSON-BRENES;

the defendant herein, did unlawfully and knowingly manage and control a place located at Urbanization Jardines de Dorado, D-14 Gardenias Street, in Dorado, Puerto Rico, as an owner, and did knowingly and intentionally rent and make available for use said place for the purpose of unlawfully storing and distributing kilograms of cocaine, a controlled substance. All in violation of 21 U.S.C. § 856(a)(2) & (b).

## NARCOTICS FORFEITURE ALLEGATION

The allegations contained in Counts One through Four of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853.

Pursuant to 21 U.S.C. § 853, upon conviction of the offense in violation of 21 U.S.C. §§ 841 and 846, set forth in Counts One through Four of this Indictment, the defendants shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

    a.  $750,240.00 in US currency seized on March 15, 2021.

    b.  $6,087.00 in US currency seized on March 15, 2021.

    c.  $16,969.00 in US currency seized on March 15, 2021.

    d.  $127,810.00 in US currency seized on March 16, 2021.

    e.  $ 28,000.00 in US currency seized on March 16, 2021.

    f.  A sum of money equal to the value of any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offenses alleged in Counts One through Four and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses alleged in Counts One through Four, in the amount of at least $15,000,000, which may be entered in the form of a forfeiture money judgment;

If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p).

TRUE BILL

FOREPERSON

Date: _May 11, 2022_

W. STEPHEN MULDROW
United States Attorney

Teresa S. Zapata Valladares
Assistant United States Attorney
Deputy Chief, Gang Section

R. Vance Eaton
Special Assistant United States Attorney
Gang Section

Camille García-Jiménez
Assistant United States Attorney
Transnational Organized Crime Section